Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JEYLEEN ORTIZ ORTIZ Apelante v. PONCE HEALTH SCIENCES UNIVERSITY Y OTROS Apelado | KLAN202400659 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Ponce Caso Núm.: PO2019CV00554 Sobre: Incumplimiento de contrato |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rivera Marchand, Jueza Ponente

**SENTENCIA EN RECONSIDERACIÓN**

En San Juan, Puerto Rico, a 16 de octubre de 2024.

Comparece ante esta Curia, Jayleen Ortiz Ortiz (Sr. Ortiz Ortiz o apelante). Solicita que revoquemos la *Sentencia* que el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI o foro primario) notificó el 11 de junio de 2024.[1] Mediante el referido dictamen, el foro primario desestimó sumariamente y con perjuicio la presente causa de acción.

El 30 de agosto de 2024, emitimos una *Sentencia* mediante la cual ordenamos la desestimación del presente recurso de apelación. Lo antes, por entender que carecíamos de jurisdicción ante su omisión de acreditar la notificación oportuna al foro primario de la presentación de su recurso ante esta Curia, mediante una copia de la carátula ponchada que refleje la fecha y hora de su presentación, tal cual lo exige la Regla 14(B) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.14(B).

Evaluada la *Moción en Solicitud de Reconsideración* de la apelante y luego de constatar que el foro primario fue notificado

---

[1] Apéndice, págs. 1-13.

oportunamente sobre la presentación del recurso de apelación ante esta Curia, determinamos acoger el petitorio de reconsideración y dejar sin efecto nuestro dictamen desestimatorio.

Superado el asunto de índole jurisdiccional, procedemos a resolver el recurso ante nos. Adelantamos que, por los fundamentos que exponemos a continuación, confirmamos la *Sentencia* apelada. Veamos.

**I.**

La Sra. Ortiz Ortiz instó una *Demanda* en contra de la Universidad Autónoma de Guadalajara, de Ponce Health Sciences University (PHSU) y del Hospital General Menonita de Aibonito, Inc. (Hospital Menonita) sobre daños y perjuicios contractuales y extracontractuales, incumplimiento de contrato, entre otras causales.[2] En apretada síntesis, la demandante expuso que era estudiante del programa de rotaciones denominado *Ponce Health University UAG Pre-Internship Educational Program* (pre-internado) establecido entre la Universidad Autónoma de Guadalajara y PHSU. Añadió que, mediante comunicación suscrita el 28 de febrero de 2018, y contrario a derecho, PHSU la expulsó de dicho programa, sin dar cumplimiento a los reglamentos aplicables. Sobre tales bases, solicitó ser reinstalada en el pre-internado, más el resarcimiento por los daños y perjuicios sufridos.

Acto seguido, PHSU contestó la demanda y en ella arguyó que, la causa de su expulsión fue la propia conducta de la demandante.[3] Puntualizó, además, que la Sra. Ortiz Ortiz incurrió en más de cinco incidentes, con empleados diferentes, que constituyeron violaciones a los reglamentos universitarios.

---

[2] Apéndice, págs. 134-139. Cabe señalar que, la demanda fue objeto de dos enmiendas a los fines de, primeramente, eliminar como parte demandada a la Universidad Autónoma de Guadalajara, y a su agente, *International Educational Programs* y, en segundo lugar, para cuantificar los daños reclamados. Apéndice, págs. 140-146 y 161-168, respectivamente.

[3] Apéndice, págs. 147-152. Posteriormente, y mediante similares argumentos, contestó la segunda demanda enmendada. Apéndice, págs. 296-302.

De igual forma, el Hospital Menonita contestó la demanda y, en ella, negó gran parte de las alegaciones de la demanda y levantó múltiples defensas afirmativas, entre otras, que el incidente objeto de la demanda fue consecuencia de la culpa y negligencia de la Sra. Ortiz Ortiz.[4]

Al cabo de varias incidencias procesales que es innecesario pormenorizar, PHSU instó un petitorio sumario en donde propuso 18 hechos incontrovertidos. A su vez, solicitó la desestimación de la causa.[5] Discutió que, la conducta indisciplinada y poco profesional de la Sra. Ortiz Ortiz constituyó la causa de su suspensión.

Por su parte, el Hospital Menonita instó un petitorio intitulado *Moción de Desestimación y Uniéndonos a Solicitud de Sentencia Sumaria del PonceHealth [sic] Science U[n]ivers[i]ty*.[6] En ella, acogió los argumentos del petitorio sumario de PHSU y, además, invocó las defensas de prescripción y falta de parte indispensable como fundamento para solicitar la desestimación de la causa de epígrafe.

Al oponerse a lo anterior, la apelante arguyó que PHSU se apartó de sus reglamentos y violentó su debido proceso de ley al expulsarla del programa de pre-internado, privándola de exponer sus defensas ante el Comité *Ad Hoc*.[7] Sostuvo además que, la

---

[4] Apéndice, págs. 153-158. El Hospital Menonita se opuso a la segunda enmienda a la demanda bajo el fundamento de que, la demandante pretendía añadir daños especiales, en particular, lucro cesante y disminución de la capacidad laboral, sin estos formar parte de la demanda original. No obstante, lo anterior, contestó la segunda enmienda a la demanda de forma similar a la previamente instada.

[5] Apéndice, págs. 14-25. Junto a la *Solicitud de Sentencia Sumaria*, PHSU incluyó los siguientes documentos: Anejo I-Carta del 8 de mayo de 2017; Anejo II-Contestación a Interrogatorio suscrito por Ponce Health Sciences University; Anejo III-Correo electrónico del 24 de octubre de 2017 suscrito por la Brenda L. Green Berríos; Anejo IV-Correo electrónico del 19 de febrero de 2018 suscrito por Roberto Collazo Carpena; Anejo V-Correo electrónico y Reporte del 14 de diciembre de 2017 de Axel Arroyo Rodríguez; Anejo VI-Memo del 19 de febrero de 2018 suscrito por Maribel Aponte; Anejo VII-Correo electrónico del 19 de febrero de 2018 suscrito por Axel Arroyo dirigido a Teresa Colón; Anejo VIII- Correo electrónico del 19 de febrero de 2018 suscrito por Axel Arroyo dirigido a Emil Ruiz; Anejo IX-Captura de pantalla; Anejo X-Carta del 20 de febrero de 2018 emitida por Jeyleen Ortiz; Anejo XI-Carta del 28 de febrero de 2018 emitida por Georgina Aguirre; Anejo XII-Carta del 1 de marzo de 2018 emitida por Jeyleen Ortiz; Anejo XIII-Carta del 5 de abril de 2018 emitida por Olga Rodríguez de Arzola; y Anejo XIV-Artículos de la Revista Imagen y del Periódico Metro de Puerto Rico.

[6] Apéndice, págs. 86-93.

[7] Apéndice, págs. 102-111 y 112-120. Con su oposición al petitorio sumario, la demandante incluyó el siguiente documento: *Ponce Health Sciences University Student Policy Manual 2018-2020* (Manual del Estudiante).

Universidad Autónoma de Guadalajara no es parte indispensable debido a que, al ella estar participando del programa en PHSU, las normas que rigen son las de dicha entidad.

Luego de analizar la *Solicitud de Sentencia Sumaria* interpuesta por PHSU, el petitorio de desestimación instado por el Hospital Menonita, la *Moción en Oposición a Moción de Desestimación* y la *Moción en Oposición a Solicitud de Sentencia Sumaria* que presentó la apelante, y varias réplicas subsiguientes, el foro primario formuló las siguientes determinaciones de hechos:

1. La demandante fue aceptada al programa de pre-internado, el programa es parte de una alianza entre la Universidad Autónoma de Guadalajara (UAG) y PHSU.

2. El 8 de mayo de 2017, la demandante fue aceptada al programa de pre-internado de la PHSU con el Hospital General Menonita.

3. La demandante al ser estudiante de la UAG debe seguir las normas y reglamentos tanto de UAG, como del HGM y de la PHSU.

4. La demandante comenzó a tener problemas de conducta no profesional recurrentes, dado su comportamiento en el HGM. Dichas conductas conllevaron la aplicación a la demandante de la política de "Unprofessional Behavior" y su eventual expulsión del programa.

5. En el mes de octubre de 2017, post Huracán María, ocurrieron varios incidentes entre la directora de Contabilidad del HGM, Sra. Brenda Green, y la demandante, en el HGM-Aibonito. La demandante se dirigió hacia el personal de Contabilidad del HGM con una actitud y un trato desagradable hacia ellos. El incidente fue reportado al director del Programa de Internos en el HGM, Dr. Axel Arroyo, QEPD.

6. El 6 de diciembre de 2017 ocurrió otro altercado con la demandante y el personal del HGM. El Sr. Roberto Collazo Carpena fue víctima de una actitud hostil de la demandante. El incidente fue reportado al director del Programa de Internos en el HGM, Dr. Axel Arroyo, QEPD.

7. Dado el patrón de conducta de la demandante en diciembre 2017, en el Hospital prepararon un reporte de conflictos que fue notificado al personal de PHSU. En dicho informe se narran altercados en los meses de agosto, septiembre y octubre, con distintos empleados del HGM.

8. El 19 de febrero de 2018 ocurrió otro incidente entre la Sra. Maribel Aponte, coordinadora de educación del hospital y la demandante. En este incidente hubo insultos, palabras soeces, gritos y amenazas por parte de la demandante hacia la Sra. Aponte.

9. A raíz del incidente ocurrido el 19 de febrero de 2018, la Sra. Teresa Colón del HGM se comunica con el personal administrativo de dicho hospital haciendo un recuento de lo ocurrido con la demandante y de igual forma lo hace el Dr. Axel Arroyo del HGM.

10. El 19 de febrero de 2018, el Dr. Axel Arroyo del HGM hace una recomendación a HGM, informando que recomiendan la suspensión sumaria de participar de cualquier programa en cualquier facilidad del HGM, y ese día el Dr. Axel Arroyo informó a la demándate [sic] que sus vacaciones habían sido adelantadas, se le retiró su identificación de SSM y la llave del cuarto estudio.

11. Dada la gravedad de su conducta, la demandante fue notificada y remitida al comité de promociones para la acción disciplinaria correspondiente.

12. El 20 de febrero de 2018, en carta dirigida a Emil Ruiz, firmada por la demandante, esta expuso por escrito su postura respecto a su conducta. De dicha carta surge claramente las hostilidades de la propia demandante.

13. El 28 de febrero de 2018, PHSU determinó expulsar a la estudiante dada su conducta y falta de profesionalismo.

14. El 1 de marzo de 2018, la demandante solicitó reconsideración de la expulsión. En dicha reconsideración la demandante admite que cometió varias faltas incluyendo su interacción con pacientes.

15. La UAG le envía una carta a la demandante con fecha de 14 de marzo de 2018 donde le indica que ha sido "dada de baja" por motivos de indisciplina durante su estancia en el HGM. Además, se le indica que ha sido suspendida por un año de la UAG.

16. El 5 de abril de 2018 el comité ad-hoc del PHSU evaluó todos los documentos de apelación sometidos por la demandante y los documentos que fueron evaluados por el Comité de Promociones de Estudiantes y sostuvo la decisión sobre la suspensión.

17. La demandante indicó en entrevistas a medios de comunicación que su condición de salud diagnosticada en el 2016, le impedían hacer el internado en medicina para ejercer su profesión.

18. La demanda original del caso de epígrafe fue radicada el 21 de febrero de 2019.

19. La UAG consta como parte demandada en el epígrafe, hay alegaciones en su contra y nunca fue emplazada en el presente caso.

20. Las alegaciones en contra del HGM de la segunda demanda enmendada, están contenidas en los párrafos 19, 20 y 21, en donde se alega que HGM dirigió varias misivas denominadas "informes" a PHSU donde se indicaba alegada conducta impropia de la demandante.

21. Del párrafo 22 de la segunda demanda enmendada, se alega que PHSU removió a la parte demandante del programa de internado. Y de igual forma, en los párrafos 35, 36 y 37 de la solicitud se alega que la parte demandante fue dada de baja y suspendida por un año de la Universidad Autónoma de Guadalajara.

22. Surge de las propias alegaciones en la demanda, párrafo 38, que la Universidad Autónoma de Guadalajara le requirió a la demandante que comenzara nuevamente el programa de internado a partir de Julio de 2019 y que lo debía hacer en Guadalajara.

23. La demandante voluntariamente no terminó el programa.

24. Se desprende de las propias alegaciones de la demanda que fue la PHSU quien removió a la demandante del programa de pre-internado y durante dicho proceso el HGM no participó.

Cónsono con lo anterior, el TPI emitió la *Sentencia* apelada, mediante la cual, declaró ha lugar los petitorios de PHSU y del Hospital Menonita. Concluyó que, la Sra. Ortiz Ortiz incurrió en conducta indisciplinada hacia varias personas del Hospital Menonita las cuales justificaron su expulsión del programa de pre-internado.

En cuanto a la alegada violación al debido proceso de ley, el foro primario entendió que la Sra. Ortiz Ortiz fue debidamente notificada y remitida al comité de promociones de PHSU para la acción disciplinaria pertinente y tras escuchar su postura incluyendo la reconsideración fue expulsada.[8] Consideró que, la Universidad Autónoma de Guadalajara permitió a la demandante realizar el programa de pre-internado en México, una vez vencido el año de suspensión, sin embargo, ella voluntariamente no lo hizo.

---

[8] Apéndice, pág. 12.

Basado en lo antes, el foro primario razonó que la demandante no terminó el programa de pre-internado por razones de salud. Por consiguiente, el foro primario dictaminó que no existe un nexo causal entre los daños reclamados y los actos de los demandados. A esos efectos, desestimó la causa de acción presentada y ordenó el archivo del caso, con perjuicio.

Insatisfecha con la determinación del TPI, el 10 de julio de 2024, la apelante recurrió ante esta Curia mediante el presente recurso, por entender que el foro primario cometió los siguientes errores:

> Erró el honorable Tribunal de Primera Instancia al declarar ha lugar la solicitud de sentencia sumaria presentada por PHS, a la cual se le unió Hospital Menonita.

> Erró el honorable Tribunal de Primera Instancia al declarar ha lugar la solicitud de desestimación presentada por Hospital Menonita.

> Erró el honorable Tribunal de Primera Instancia al no considerar los procedimientos establecidos en el manual del estudiante de PHSU lo cual denota que no siguió los procedimientos establecidos.

Pendiente el recurso ante nos y según adelantamos, PHSU y el Hospital Menonita instaron petitorios separados solicitando su desestimación. Lo antes, bajo el fundamento de que la apelante no acreditó haber notificado oportunamente al TPI una copia de la cubierta del recurso sellada con la fecha y hora de presentación, en cumplimiento con la Regla 14(B) del Reglamento del Tribunal de Apelaciones, *supra*. Le imputaron, además, haber quebrantado la Regla 16(E)(1)(d) de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 16(E)(1)(d), al excluir del apéndice de su recurso la *Réplica a Moción en Oposición a Solicitud de Sentencia Sumaria* que instó PHSU.

De otra parte, PHSU instó su alegato en oposición y allí reiteró que la causa próxima de la suspensión de la apelante del programa de pre-internado fueron sus propias actuaciones indisciplinadas. Aseguró haberle brindado la oportunidad de ser escuchada y de

presentar su postura por escrito en la cual admitió las faltas imputadas.

Vencido el término que provee la Regla 22 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 22, y conforme lo autoriza la Regla 7 (b)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7 (b)(5), prescindiremos del alegato en oposición del Hospital Menonita, "con el propósito de lograr su más justo y eficiente despacho".

## II.

### A. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no existe controversia real y sustancial de un hecho material que requiera ventilarse en un juicio plenario, por lo cual solo resta aplicar el derecho. *Cruz Cruz y otra v. Casa Bella Corp. y otros,* 2024 TSPR 47, resuelto el 8 de mayo de 2024; *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un

remedio justo, rápido y económico. *Serrano Picón v. Multinational Life Ins.,* 212 DPR 981, 992 (2023).

Como se sabe, procede dictar sentencia sumaria si se desprende de las alegaciones, deposiciones, declaraciones juradas, contestaciones a interrogatorios, admisiones ofrecidas, entre otros, que no existe controversia real sustancial sobre un hecho esencial y pertinente, y siempre que el derecho aplicable así lo justifique. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601, 610-611 (2023).

De manera que, en aras de prevalecer, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022). Por ello, y en lo pertinente al caso ante nos, una parte demandada puede solicitar sentencia sumaria ante la insuficiencia de prueba sobre todos los elementos indispensable de su causa de acción. *Íd.* El promovente de la referida solicitud debe demostrar que: 1) la vista es innecesaria; 2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial, y 3) como cuestión de derecho procede la desestimación de la reclamación. *Ramos Pérez v. Univisión* 178 DPR 200, 217-218 (2010); *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716 (1994). Para ello, es indispensable que se le haya brindado al promovido amplia oportunidad para realizar un descubrimiento de prueba adecuado. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales

y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Oriental Bank v. Caballero García,* supra. Véase, además, la Regla 36.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3.

Nótese que, si el promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015). Además, el promovente de una solicitud de sentencia sumaria ha de acompañar su petitorio con prueba de la cual surja preponderantemente la ausencia de controversias sobre los hechos medulares del caso. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company,* supra.

Cabe destacar que, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, la Regla 36.3(c) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c), obliga a quien se opone a que se declare con lugar esta solicitud a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.* A esos efectos, deberá sustentar con evidencia sustancial los hechos materiales que entiende están en disputa. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company,* supra.

Por ello, en la oposición a una solicitud de sentencia sumaria, el promovido debe detallar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos, deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.*

Cabe puntualizar que, a tenor de la normativa aplicable, si la parte promovida opta por no oponerse al petitorio sumario, conforme a las Reglas de Procedimiento Civil, *supra,* se arriesga a que el TPI dicte sentencia en su contra, si procede en derecho. Véase, Regla 36.3(c) de las Reglas de Procedimiento Civil, *supra; León Torres v. Rivera Lebrón,* supra. Entiéndase que, el mero hecho de que la parte promovida no presente una oposición o, de presentarla, no cumple con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra,* ello no obliga al juzgador de los hechos a automáticamente disponer del asunto por la vía sumaria. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 432 (2013). Lo antes está sujeto a la sana discreción del Tribunal. *Íd.*, págs. 432-433.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.*, pág. 625. Además,

al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz Cruz y otra v. Casa Bella Corp. y otros,* supra. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.*

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119. En particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la

controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, los foros apelativos nos encontramos en la misma posición que el Tribunal de Primera Instancia y utilizamos los mismos criterios para evaluar la procedencia de una sentencia sumaria. *Cruz Cruz y otra v. Casa Bella Corp. y otros,* supra. Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa. *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *Acevedo y otros v. Depto Hacienda y otros,* 212 DPR 335, 352 (2023).

**III.**

Nos corresponde dilucidar si el foro primario incidió al desestimar con perjuicio la demanda de epígrafe por la vía sumaria. A tenor de lo resuelto en *Meléndez González et al. v. M. Cuebas*, supra, al justipreciar la corrección de la determinación del foro primario, debemos revisar *de novo* los petitorios sumarios de PHSU y del Hospital Menonita, las oposiciones de la apelante y sus respectivos anejos, a la luz del derecho aplicable.

A esos efectos, hemos de evaluar primeramente si las partes cumplieron con los requisitos de forma que establece la Regla 36 de Procedimiento Civil, *supra.* Realizado el examen de rigor, constatamos que PHSU cumplió con los requisitos de forma que disponen nuestras reglas procesales, no así el Hospital Menonita en su petitorio sumario ni la apelante al oponerse. De un examen de la moción en oposición de la apelante surge que presentó quince hechos que a su entender no están en controversia. Sin embargo, observamos que no coinciden correctamente con la correlación de

las propuestas de hechos promovidas por PHSU. En algunas instancias la apelante no se refiere a propuesta alguna y tampoco realiza referencia a documento alguno. De otra parte, la apelante no acreditó los hechos materiales en disputa con evidencia sustancial conforme exige la Regla 36.3 (c). En particular no ofreció evidencia alguna que controvirtiera lo expuesto por Waleska Murphy, oficial de cumplimiento de PHSU mediante su contestación a interrogatorio juramentado. De esta forma y según lo resuelto en *León Torres v. Rivera Lebrón,* supra, la parte opositora se corre el riesgo de que se dicte sentencia sumaria en su contra.

Ahora bien, en cumplimiento con la normativa antes expuesta, superado la primera parte de nuestro análisis, nos compete justipreciar *de novo* si existen hechos medulares en controversia que impedían la adjudicación sumaria de esta causa para luego aplicar el derecho. Al mismo tiempo, habremos de atender los señalamientos de error previamente expuestos en conjunto.

En su recurso, la apelante cuestiona la determinación del TPI de desestimar sumariamente la demanda de epígrafe, sin considerar que PHSU violentó el debido proceso de ley, que las actuaciones de los apelados exacerbaron la condición de salud de la apelante, que se incumplió el contrato y que no se probaron las alegaciones de conducta impropia de la apelante.

En su alegato en oposición, PHSU discute que la apelante tuvo la oportunidad de presentar por escrito su versión de los hechos, lo cual en efecto hizo en múltiples ocasiones. Asegura que el Comité *Ad Hoc* evaluó los documentos que la apelante presentó previo a ratificar su expulsión, por lo que se cumplió la exigencia del debido proceso. Añadió que, la apelante no logró controvertir los hechos, según propuestos en el petitorio sumario. En su consecuencia, arguyó que no procede revertir el dictamen apelado.

Surge de los hechos incontrovertidos sostenidos con el expediente que, la apelante incurrió en conducta no profesional frente a empleados del Hospital Menonita durante el programa de pre-internado del cual participaba. En particular, durante el mes de octubre de 2017, trató de forma "desagradable" a la Sra. Brenda L. Green Berríos, Directora de Contabilidad del Hospital Menonita, y a otros miembros de la división, mientras intentaba localizar un sobre con documentos personales extraviado en el área frecuentada por los internos para estudiar.[9] A lo antes se añade que, el 6 de diciembre de 2017, fue hostil con el Sr. Roberto Collazo, Coordinador de Mercadeo y Comunicaciones del Hospital Menonita, quien interesaba utilizar, durante una hora, el área de estudio de los internos para realizar una grabación del programa radial. Luego, el 19 de febrero de 2018, la apelante insultó con palabras soeces a la Sra. Maribel Aponte, Coordinadora de Educación del Hospital Menonita, quien entró al área de estudio en donde se encontraba la apelante procurando al Dr. Gil.[10]

En respuesta a este altercado con la Sra. Maribel Aponte, la apelante dirigió una carta al Decano de PHSU, Lic. Emil Ruiz, el 20 de febrero de 2018, en la cual imploró que la dejen terminar las tres (3) rotaciones que le faltan. Allí admitió haberle gritado a la Sra. Maribel Aponte, que se "largara" del área donde ella estaba estudiando y expresó que debió ignorarla sin abrirle la puerta.[11]

Luego de estudiar las quejas de los distintos empleados del hospital en contra de la apelante, el 28 de febrero de 2018, el Comité de Promoción de PHSU determinó darle de baja del programa de pre-internado.

---

[9] Apéndice, pág. 36.
[10] Según relató la Sra. Aponte, la apelante se refirió a ella como "pendeja" y "vete pal carajo". Véase, Apéndice, pág. 41.
[11] Apéndice, págs. 68-69.

En reacción y a modo de reconsideración, el 1 de marzo de 2018, la apelante dirigió una carta a la Dra. Olga Rodríguez de Arzola, Decana de Medicina, y al Dr. Fabio Lugo, Presidente del Comité de Promociones. Con respecto al incidente con la Sra. Maribel Aponte, la apelante reconoció que debe mejorar en muchas áreas y que debió reaccionar de mejor manera. Además, la apelante describió que el incidente ocurrido entre ella y el Sr. Roberto Collazo, se suscitó cuando este último le cuestionó por qué estaba cerrando la puerta con el pie, a lo que ella admitió haber respondido: "¡A usted no le interesa c[ó]mo yo cierro la puerta, eso no es problema suyo!"[12] Aseguró que en ningún momento el trato hacia sus pacientes se vio afectado. Reiteró su interés por terminar sus rotaciones y su disponibilidad de ser trasladada a otro hospital para esos fines. Rechazó la posibilidad de terminar la rotación en México debido a que ello conllevaría la suspensión de un tratamiento médico que enfrenta hace más de un año.[13]

Acto seguido, el 14 de marzo de 2018, la Universidad Autónoma de Guadalajara suspendió a la apelante de la Escuela de Medicina, durante un año. Dispuso, además, que la apelante podrá cursar el pre-internado en su totalidad, a partir de julio de 2019, con la salvedad de que lo antes deberá realizarlo obligatoriamente en México.[14]

Nuevamente la apelante solicitó la revisión, esta vez, tanto de la suspensión del programa de pre-internado como de la Escuela de Medicina. La apelante dirigió su misiva a la Dra. Olga Rodríguez de Arzola, fechada el 21 de marzo de 2018. En ella, además de exponer que no le faltó el respeto a la Sra. Maribel Aponte, solicitó una segunda oportunidad. Expresó su disposición para terminar el

---

[12] Apéndice, págs. 73-74.
[13] Apéndice, págs. 75-76.
[14] El contenido de la referida carta obra textualmente en el petitorio sumario de PHSU. Apéndice, pág. 20.

programa en otro hospital o incluso en México, aunque ello implique la suspensión de su tratamiento médico.[15]

En respuesta a la solicitud de reconsideración de la apelante, el 5 de abril de 2018, el Comité *Ad Hoc* certificó haber evaluado los documentos que reflejan las posturas de la apelante, previo a dictaminar mantener la expulsión que determinó el Comité de Promoción.[16]

A parte de las referidas comparecencias por escrito, surge del expediente que la apelante se reunió con el Decano Emil Ruiz, para escuchar su versión sobre el incidente que tuvo con el Sr. Roberto Collazo.[17] La apelante informó de otra reunión con el Decano referente a un mensaje de texto que ella remitió al Dr. Axel Arroyo, en donde admitió haber utilizado unas emociones que el galeno interpretó como una falta de respeto.[18] Sobre el particular, la apelante indicó haberse disculpado.

Efectuado un cabal y mesurado análisis del expediente ante esta Curia, no identificamos que el TPI haya errado al resolver sumariamente la presente causa, en ausencia de hechos medulares en controversia. Las admisiones que la apelante plasmó en las referidas cartas confirman a todas luces su conducta irrespetuosa y agresiva hacia distintos empleados del Hospital Menonita. Resulta evidente que, es precisamente su comportamiento inapropiado lo que dio base a que PHSU la expulsara del programa de pre-internado.

Además, surge de la determinación de hecho #23 que consignó el foro apelado que, la apelante no finalizó el programa de pre-internado de forma voluntaria. A pesar de que la apelante no cuestionó este hecho en su recurso ante nos, se colige del expediente

---

[15] Apéndice, pág. 76.
[16] Apéndice, pág. 79.
[17] Apéndice, pág. 33.
[18] Apéndice, pág. 73.

que la Universidad Autónoma de Guadalajara le ofreció cursar el programa de pre-internado en México, a partir de julio de 2019, lo cual a todas luces rechazó voluntariamente. En la eventualidad de que la apelante declinó la oferta de la Universidad Autónoma de Guadalajara debido a su condición de salud preexistente, esa constituiría la causa de los daños que reclama.[19] En consideración a lo previamente esbozado, no existe un nexo causal entre la expulsión de PHSU de su programa de pre-internado y los daños reclamados. Coincidimos con el foro primario en cuanto a que, fueron las propias actuaciones indisciplinadas de la apelante la causa próxima de su suspensión del programa de pre-internado, por lo cual, está impedida de ir contra sus propios actos para reclamar daños. *OCS v. Universal,* 187 DPR 164 (2012). En múltiples escritos, la apelante admitió los hechos y reconoció no haber actuado de la mejor manera.

Con respecto a la presunta violación de PHSU al debido proceso de ley de la apelante, reiteramos que, esta última pudo exponer su posición frente al Decano Emil Ruiz, así como, mediante los escritos cursados ante PHSU en todas las etapas procesales. Añádase que la contestación a interrogatorio de la oficial de cumplimiento de PHSU no fue propiamente rebatido por la apelante. De ahí surge que, PHSU dio cumplimiento al procedimiento debido para casos como el de autos que versan sobre conducta no profesional. En particular, la Sra. Waleska Murphy afirmó que, "aunque la política de Unprofessional Behavior no lo contempla, a la estudiante se le dio oportunidad de que hiciera reconsideración al comité de promoción de estudiantes y posteriormente apelación al comité ad hoc."[20] Dicha afirmación no fue cuestionada propiamente por la apelante. Consideramos que los argumentos

---

[19] Apéndice, pág. 75.
[20] Apéndice, pág. 34.

expuesto por la apelante no resultan eficaces para controvertir la evidencia fehaciente que obra en el expediente y el hecho que PHSU atendió su reconsideración. De conformidad con lo resuelto por nuestro más Alto Foro en *Selosse v. Fund. Educ. Ana G. Méndez*, 122 DPR 534, 546-547 (1988), el TPI correctamente dictaminó que, los foros judiciales debemos ser deferentes a las determinaciones de las instituciones educativas y su interpretación a sus procesos y reglamentos en aras de garantizar que sin intromisiones ejerzan su juicio.

En ausencia de controversias sobre hechos medulares, dado que, quedó demostrado que no existe una relación causal entre la actuación de PHSU de expulsar a la apelante del programa de pre-internado y los daños que reclamó, en consideración a que la apelante voluntariamente rechazó continuar sus estudios en la Universidad Autónoma de Guadalajara, y en atención a la deferencia que nos merecen los procesos y las decisiones institucionales de entidades educativas privadas, concluimos que la apelante no nos ha puesto en posición para revertir el dictamen apelado. El foro primario no incidió al desestimar la causa de epígrafe por la vía sumaria.

**IV.**

Por los fundamentos que anteceden, confirmamos la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones